# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-1492
### (Not to be Published)

* * * * * * * * * * * * * * * * * * * * * * *

MATTHEW A. O'BRIEN,

                Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                Respondent.

Chief Special Master Corcoran

Dated: March 22, 2021

Attorney's Fees and Costs;
Petitioner's Costs; Expert Fees.

* * * * * * * * * * * * * * * * * * * * * * *

*Glen Howard Sturtevant, Jr.*, Rawls Law Group, Richmond, VA, for Petitioner.

*Althea Walker Davis*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On September 27, 2018, Matthew O'Brien filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program"),[2] alleging that the influenza vaccine he received on November 21, 2016, caused him to experience a shoulder injury related to the vaccine administration. The case was originally assigned to the Special Processing Unit (the "SPU"), but was transferred out when it became evident that fact and legal issues with the asserted

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). This means that the Decision will be available to anyone with access to the internet. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Table claim rendered the matter improper for SPU resolution. Petitioner subsequently endeavored to offer additional evidentiary support for his claim, including an expert opinion, but indicated in a subsequent status report that these attempts had been unsuccessful. Status Report, dated Oct. 30, 2020 (ECF No.49). Accordingly, on November 10, 2020, Petitioner filed a Motion to Dismiss (ECF No. 50), which I granted on November 12, 2020. Decision, filed Nov. 12, 2020 (ECF No. 51).

Petitioner has now filed a motion for a final award of attorney's fees and costs for all work performed on the matter since its inception. Motion, filed Jan. 21, 2021 (ECF No. 55) ("Mot."). Petitioner requests a final award of $36,997.84—$30,139.60 in attorney's fees, plus $6,858.24 in costs—for the work of Mr. Glen Sturtevant, Esq. and the supportive work of three paralegals. Mot. at 3; Fees Invoice, filed as Ex. 17 on Jan. 21, 2021 (ECF No. 55-1). The costs requested include costs for medical record retrieval, expert consultation fees, and court filings. Costs Invoice, filed as Ex. 18 on Jan. 21, 2021 (ECF No. 55-2). Petitioner also requests $64.58 for costs he personally incurred. Mot. at 3; General Order No. 9 Response, filed Jan. 21, 2021 (ECF No. 55-4). These costs are related to medical record shipping expenses. Receipts, filed as Ex. 19 on Jan. 21, 2021 (ECF No. 55-3).

Respondent reacted to the fees request on February 4, 2021. *See* Response, dated Feb. 4, 2021 (ECF No. 56). Respondent is satisfied that the statutory requirements for an attorney's fees and costs award are met in this case, but defers the calculation of the amount to be awarded to my discretion. *Id.* at 3–4.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's motion, awarding fees and costs in the total amount of **$36,597.84**, plus **$64.58** for costs personally incurred by Petitioner.

## ANALYSIS

### I.    Petitioner's Claim had Reasonable Basis

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020).

In short, the claim's reasonable basis must be demonstrated through some objective

evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[3]

My review of the file in this matter persuades me that Petitioner's claim had sufficient objective basis to entitle him to a fees and costs award, despite the case's dismissal. Petitioner's good faith arguments were backed by objective support in the record for core matters like proof of vaccination and the nature of Petitioner's injury. Respondent for his part does not otherwise contest reasonable basis. Accordingly, a final award of fees and costs in this matter is appropriate.

## II.     Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424,

---

[3] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for his attorney and support staff, based on the years work was performed:

|  | **2018** | **2019** | **2020** | **2021** |
|---|---|---|---|---|
| **Mr. Glen Sturtevant (Attorney)** | $326 | $339 | $353 | $372 |
| **Paralegal** | $152 | $156 | $163 | $172 |

Mr. Sturtevant (who practices in Richmond, Virginia) has repeatedly been found to be "in forum," and is therefore entitled to the rates established in *McCulloch*. The rates requested for Mr. Sturtevant (as well as the paralegal work performed in this case) are also consistent with what has previously been awarded in accordance with the Office of Special Masters' fee schedule,[4] and increased rates for 2021 are also consistent with prior increases. *See, e.g.*, *Taylor v. Sec'y of Health & Hum. Servs.*, No. 18-1545V, 2020 WL 6144807, at *2 (Fed. Cl. Spec. Mstr. Sept. 21, 2020). I thus find no cause to reduce them in this instance. I also deem the time devoted to the matter reasonable, and therefore award fees for all work performed on the case as requested in the fees application.

### III.    Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as

---

[4] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited Mar. 22, 2021).

by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $6,858.24 in costs incurred since the claim's filing, including medical record retrieval, expert consultation fees, and filing fees. Mot. at 3; Costs Invoice. Such costs are typical in Program cases and are thus eligible for reimbursement. Petitioner also seeks reimbursement of expert consultation fees for work performed by Dr. Daniel Carr. Costs Invoice at 17. In support of this request, Petitioner offers a receipt outlining the rates charged by Dr. Carr for specific services provided, including a $1,500.00 retainer fee, $500.00 per hour of medical record review, and a variable rate[5] for communications with counsel. *Id.* Significantly, Dr. Carr never filed an expert report in this case. *Id.*

There is no doubt that *some* award of expert fees is warranted in this matter as it appears Dr. Carr's opinions regarding the claim's likelihood of success contributed to Petitioner's decision to voluntarily dismiss the claim. *See* Status Report, filed Oct. 30, 2020 (ECF No. 49). But this alone is insufficient to justify reimbursement at the requested rate of $500/hour, especially in the absence of an expert report and prior Program experience. The fact that Dr Carr only reviewed medical records also counsels against a higher rate. *See, e.g.*, *Keenan v. Sec'y of Health & Hum. Servs.*, No. 17-189V, 2018 WL 2772307, at *2 (Fed. Cl. Spec. Mstr. May 2, 2018) (awarding expert costs associated with medical record review at a rate of $400/hour).

The facts of this case are comparable to those in *Keenan*, where the petitioner's expert was awarded reimbursement at a rate of $400/hour for medical record review in the absence of a written report. *Keenan*, 2018 WL 2772307, at *2. But *Keenan* is distinguishable in one regard: the expert's prior Program experience. *Id.* Dr. Carr has not previously testified in the Program, and at present even the most experienced Program experts are awarded only between $450 and $550 per hour.[6] *See Braden v. Sec'y of Health & Hum. Servs.*, No. 17-975V, 2020 WL 7867144, at *4 (Fed. Cl. Spec. Mstr. Nov. 18, 2020). In *Keenan*, I noted that petitioner's expert had previously been awarded the requested rate of $400/hour in at least two other Program cases. *Keenan*, 2018 WL 2772307, at *2.

Here, Dr. Carr's experience consulting in other matters, such as Social Security Disability claims, buoys Petitioner's request to some degree, and it is a factor that I consider in determining the reasonableness of Dr. Carr's requested rates—though I afford it less weight than what is afforded to prior Program experience. *See, e.g.*, *Ido v. Comm'r of Soc. Sec.*, No. 18-1053V, 2020 WL 85127, at *4

---

[5] Dr. Carr's fee schedule indicates that he charges $300.00 for the first fifteen minutes of communication. His fee is then reduced to $150.00 for each subsequent fifteen-minute period. Costs Invoice at 17. These rate amounts are acceptable.

[6] Notably, Petitioner's costs invoice indicates that a second expert was consulted and performed some amount of record review for $250. Costs Invoice at 6. This further supports a reduction in Dr. Carr's requested rates for similar work.

(W.D.N.Y. Jan. 7, 2020). Overall, Dr. Carr's experience and limited involvement in this matter do not support the requested rate of $500/hour for medical record review—though I am amenable in the future to increasing the hourly rate paid to Dr. Carr should he continue to perform expert witness services in the Program. Instead, his time in this case will be reimbursed at the rate of $400 per hour—meaning that the total sum to be awarded for attorney costs is $6,458.24, reflecting a $400 reduction for four hours of record review time.

## IV.     Petitioner's Personal Costs

Petitioner submitted a statement in compliance with General Order No. 9 stating that she personally incurred costs related to shipping costs in the amount of $64.58. Mot. at 3; Ex. 19. Such costs are typical, and the specific amount requested is reasonable. Thus, I award the amount in full without reduction.

## CONCLUSION

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of a final fees award, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs. I therefore award a total of $36,597.84, reflecting $30,139.60 in attorney's fees and $6,458.24 in costs, in the form of a check made jointly payable to Petitioner and his attorney Mr. Glen Sturtevant. Additionally, I award a total of $64.58, representing costs personally incurred by Petitioner, in the form of a check payable to Petitioner and Petitioner's counsel.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[7]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.